MAY TERM, 1881, No. 172.                    MAY 19TH, 20TH, 1881.

# Commonwealth *versus* The Texas and Pacific Railway Co.

1. The sixteenth section of the act of June 7th, 1879, provides that "no foreign corporation, except foreign insurance companies, which does not invest and use its capital in this Commonwealth, shall have an office or offices in this Commonwealth for the use of its officers, stockholders, agents, or employés, unless it shall first have obtained from the auditor-general an annual license so to do; and for said license every such corporation shall pay into the State treasury for the use of the Commonwealth, annually, one-fourth of a mill on each dollar of capital stock which said company is authorized to have. . . . *Provided*, That no license shall be necessary for any corporation paying a tax under any previous section of this act, or whose capital stock, or a majority thereof, is owned or controlled by a corporation of this State which does pay a tax under any previous section of this act." *Held*, That this section does not apply to a corporation created by the Congress of the United States.

2. A corporation created by the government of the United States cannot, with propriety, be called a foreign corporation.

3. The words of the proviso, "capital stock, or a majority thereof," refer to the actual capital of the company, and not to the authorized or nominal capital.

4. Where, therefore, a corporation was authorized by its charter to issue stock to the amount of $50,000,000, but the amount actually issued was only $7,902,500, and all of this, with the exception of a few shares, was owned or controlled by a corporation created by the State of Pennsylvania, and having its capital and transacting its business therein, which latter corporation had paid a tax under a preceding section of the act, the said first-mentioned corporation, assuming it to be a foreign corporation, is not required to obtain a license in order to have an office within the Commonwealth.

ERROR to the Court of Common Pleas of *Dauphin County*.

The auditor-general and State treasurer of Pennsylvania, on the 21st of October, 1880, settled an account against the Texas and Pacific Railroad Company, for office license, under section sixteen of the act of June 7th, 1879, upon the authorized capital stock of the company, which is $50,000,000. The tax amounted to $12,500, with interest from October 21st, 1880. The defendant appealed, filing specifications to the effect that,

1. The defendant is not a foreign corporation, and not subject to the provisions of the said act.

2. If the said section requires a license to be obtained by

[Commonwealth *v.* The Texas and Pacific Railway Co.]

the defendant, it is in conflict with the act of Congress incorporating the defendant corporation and its supplements and the Constitution of the United States, and is void.

3. The settlement charges the company with a license fee upon $50,000,000, whereas the capital stock is only $8,653,-500.

4. The act of Assembly is in conflict with the Constitution of the State of Pennsylvania.

5. A majority of the capital stock of the defendant was, during the whole period covered by said settlement, owned or controlled by a corporation of the State of Pennsylvania paying a tax under the fourth section of the said act.

The case was tried under an agreement of counsel, which admitted as facts that the defendant is not a corporation created by the State of Pennsylvania, but is a corporation lawfully created and chartered by the Congress of the United States; that the said company does not invest and use its capital in this Commonwealth, except in the purchase of rails and other railroad material and supplies, but that the railway of the said company, so far as constructed, is within the States of Louisiana and Texas, and when completed is to extend thence westward to the Pacific coast; and that the said company did, during the year ending July 1st, 1880, have and maintain an office at No. 275 South Fourth Street in the city of Philadelphia, for the use of its officers, stockholders, agents, and employés, and that it did not obtain from the auditor-general of Pennsylvania any license to have and maintain said office.

The evidence showed that the defendant company was incorporated by act of Congress, approved May 2d, 1872. Its authorized capital stock was $50,000,000, of which it had issued $7,902,500. Of this latter amount all except a few shares were held by the California and Texas Railway Construction Company, a corporation created by the State of Pennsylvania, and having its capital and transacting its business therein. This company had a capital stock of $8,221,250, valued in the tax returns at $100,000, on which it paid a tax into the treasury of the State.

The Court below, PEARSON, P. J., found in favor of the defendant, filing the following opinion, which, after stating the facts, proceeded:

" This case presents two prominent points. *First.* Is the defendant a foreign corporation? To constitute it such it must be set up or created by a foreign government. This corporation is created by the United States. Is that a foreign government to the State of Pennsylvania? It is not a sovereignty outside of Pennsylvania, but within it, spread-

[Commonwealth *v.* The Texas and Pacific Railway Co.]

ing all over it,—a superior government embracing it,—the citizens of the United States constituting citizens of Pennsylvania, and the citizens of Pennsylvania being citizens of the United States; the laws of the United States governing and controlling Pennsylvania; the same courts having jurisdiction over each, dispensing justice alike for each. The neighboring States have no such authority within this State, nor over them. If the legislature intended to exclude the United States from having power to create corporations within Pennsylvania, it certainly did not use very apt words to express the intention in speaking of *foreign corporations.* It is as much a domestic corporation as if created by a law of this State. It emanates from a power within this State. No permission would have to be asked by the government of the United States to take possession of any part of our soil required for a public purpose within the State, as for a fort, a post-office, or a custom-house. Each year is proving more and more that the jurisdiction of the courts created by the laws of both governments are concurrent,—they run together. There are not many decisions of the courts of superior jurisdiction showing that the United States is not a foreign sovereignty to the State of Pennsylvania, but the same sovereignty, but there are a few to be found. In Claflin *v.* Houseman, assignee, 3 Otto, 136, BRADLEY, J., says: 'The United States is not a foreign sovereignty as regards the several States, but is a concurrent and, within its jurisdiction, paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State.' In Ordway *v.* The Central National Bank of Baltimore, ALVEY, J., announces a similar doctrine. He says, at page 566 of Thompson's National Bank Cases: 'The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States. is not a foreign sovereignty as regards the several States, but it is a concurrent and, within its jurisdiction, a paramount sovereignty. Every citizen of a State is a subject of two distinct sovereignties, having concurrent jurisdiction in the State,—concurrent as to place or person, though distinct as to subject-matter.' Again, he says: 'The two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country.'

'' There is no doubt of the power of the State to impose a tax on the corporation created and placed in its midst by the United States, unless for national purposes, but it must clearly describe it as it is, and exclude or tax it in express words, not as a foreign corporation. The United States

[Commonwealth *v.* The Texas and Pacific Railway Co.]

could also force it on the State, but must do it by apt words and for good and proper reasons, showing or averring the necessity.

" *Second.* The evidence shows that a connection was formed between the Texas and Pacific Railway Company and the ' California and Texas Railway Construction Company' to carry on the work. This, as found, was a corporation created by and existing in Pennsylvania, and subject to taxation under her laws. This company had a nominal capital of $10,000,000, one subscribed of $8,221,250, and actually paid in of $7,902,500, all of which, so far as we can collect, was expended in building the Texas and Pacific Railway. Yet its capital stock was owned and controlled by a corporation of this State, and pays a tax into its treasury under this act. By the end of the year 1880 its stock was reduced to $100,000, on which it paid tax that year, yet probably during the year 1879 it held a much larger capital. Its stock was actually taxed and paid to the amount of $29,935, as per receipt. The question is, does that exonerate the defendant company ? It is very probable that the construction company would have been taxed to a much larger amount under our laws. Its tax, from 1874 down to 1879, would have been much higher, but that is not an important point. This was not a settlement for taxes on the capital stock of the ' construction company,' but for a license tax against the Texas and Pacific Company. If that company was not subject to such a tax this amount as settled cannot be sustained. The evidence clearly shows that it was connected with a Pennsylvania corporation, which was subject to taxation; therefore, by the very terms of the act, the Texas and Pacific Company could not be called on to pay a license tax. Such appear to be the words of the act, apparently introduced for the express purpose of exonerating this company. So far as we can see this charge of tax is illegal.

" Here our action might stop, as we can predicate nothing on the objection that the act of Assembly, on which the tax is founded, is in conflict with the Constitution of Pennsylvania. In what particular do they conflict ? The act of 1811 requires that the person appealing shall in his appeal specify the particular in which he objects. There is no specification of objections here. Merely saying that the statute is in conflict with the Constitution is too general ; it cannot be called a specification. It should certainly be sufficiently minute to direct the public officers to the objection. We cannot tell whether the objection is to the title, or the subject-matter of the tax, because it is not uniform or imposed

on improper objects. This Court can never travel out of the specifications ; is confined to them.

"Much unnecessary matter was introduced into the evidence. It was wholly unimportant whether this company purchased $1000 or $5,000,000 worth of materials manufactured in Pennsylvania. It might be a good argument to address to the legislature to prevent the imposition of the tax, but can have no weight with the Court; is more a waste of time and labor.

"For reasons already given we are of the opinion that this license tax cannot be sustained. We, therefore, give judgment in favor of the defendant, and that the Commonwealth has no cause of action."

The exceptions of plaintiff, identical in form with the assignments of error hereinafter set forth, were overruled May 10th, 1881, and judgment entered.

Plaintiff took a writ of error assigning as error that :

1. The Court erred in deciding as follows :

"There is no doubt of the power of the State to impose a tax on the corporation created and placed in its midst by the United States, unless for national purposes, and it must clearly describe it as it is, and exclude or tax it in express words, not as a foreign corporation."

2. The Court erred in deciding, as follows :

"The evidence clearly showed that it (the Texas and Pacific Railway Company) was connected with a Pennsylvania corporation which was subject to taxation; therefore, by the very terms of the act, the Texas and Pacific Company could not be called upon to pay a license tax. Such appear to be the words of the act, apparently introduced for the express purpose of exonerating this company."

3. The Court erred in entering judgment in favor of the company, and against the Commonwealth.

*Lyman D. Gilbert* and *Henry W. Palmer*, attorney-general, for plaintiff in error.

The license tax was intended to compensate the State for the protection it afforded to corporations, upon whose property it could impose no tax, because it was beyond its jurisdiction.

The condition for the exemption of a foreign corporation from this tax is either that it made its capital stock subject to taxation by employing its capital in this State, or that one-half of its stock be taxed by reason of its being in the ownership or under the control of a domestic tax-paying corporation.

A majority, at least, of all the capital stock must be taxed.

[Commonwealth *v.* The Texas and Pacific Railway Co.]

The capital stock upon which the Commonwealth acts in regard to an alien corporation is the authorized capital stock. No kind of capital except authorized capital is mentioned in this section. The objection that this tax infringes on our Constitution is not specified as the law requires, and we respectfully submit that it raises no question upon which this Court has authority to pass. Did the legislature, by the words "foreign corporation," intend to tax a corporation having a congressional charter? The word foreign corporation means a corporation not created by our sovereignty: Eby *v.* Railroad, 7 Weekly Notes, 145 ; Eby *v.* Railroad, 6 Weekly Notes, 385 ; Insurance Company *v.* Commonwealth, 6 Norris, 173; Mintzer *v.* Montgomery County, 4 P. F. Smith, 139.

Has the legislature power to tax a company with a congressional charter? It has never been successfully asserted that a State can be compelled to admit within its limits a corporation created by any power except its own, and permit it to remain untaxed because it is the creation of another sovereign: Bank of Augusta *v.* Earle, 13 Peters, 586 ; Paul *v.* Virginia, 8 Wallace, 168 ; Thomson *v.* Pacific Railroad, 9 Wallace, 591 ; Railroad Company *v.* Peniston, 18 Wallace, 33.

The exemption of Federal agencies from State taxation is dependent not upon the mode of their construction, or upon the nature of the agents, or upon the fact that they are agents, but upon the effect of the tax. A tax upon their property does not necessarily hinder the efficient exercise of their power.

Congress never intended that this corporation should have any advantage over its rivals in respect to exemption from taxation.

It created the corporation, but left it subject to the State law.

*M. E. Olmsted* for defendant in error.

That corporations of one State are foreign to every other State, and that such other State may exclude them altogether, or may permit them to enjoy the privileges of domestic corporations upon such terms and conditions only as her legislature may see fit to impose, has been frequently decided. But it has never been held that a corporation, authorized by act of Congress to enter a State, can be excluded by the legislature of that State, or can be treated as a foreign corporation in that State: Bank of Augusta *v.* Earle, 13 Peters, 519 ; Paul *v.* Virginia, 8 Wallace, 168 ; Eby *v.* Northern Pacific Railroad Company, 6 Weekly Notes, 385 ;

Eby *v.* Northern Pacific Railroad Company, 7 Weekly Notes, 145 ; Stetson *v.* City of Bangor, 56 Maine, 288 ; Casey *v.* Galli, Thompson's Nat. Bank Cases, 142 ; Pittsburg *v.* First National Bank, 5 P. F. Smith, 45 ; Claflin *v.* Houseman, 3 Otto, 130.

It is not seen how there could be ownership in that which is merely authorized but has no existence, but if there is not ownership there is control of even the authority to issue stock in this case, as it could be issued only by the vote of the shares already issued and owned by the construction company. The case was tried by the Court below under the act of 1874 without a jury, and that Court has found that the capital stock of the defendant was owned and controlled by a corporation of this State which pays a tax.

This Court will not inquire behind this finding of facts : Jamison *v.* Collins, 2 Norris, 359 ; Lee *v.* Keys, 7 Norris, 175 ; Commonwealth *v.* Lehigh Valley Railroad Company, not yet reported.

The opinion of the Court was delivered by STERRETT, J.

The sixteenth section of the revenue act of June 7th, 1879, provides that " no foreign corporation, except foreign insurance companies, etc., shall have an office in this Commonwealth for the use of its officers, stockholders, agents, or employés, without first having obtained from the auditor-general a license to do so ; for which license every such corporation shall pay annually one-fourth of a mill on each dollar of the capital stock which said company is authorized to have." . . . . " *Provided*, that no license shall be necessary for any corporation paying a tax under any previous section of this act, or whose capital stock or a majority thereof is owned or controlled by a corporation of this State which does pay a tax under any previous section of this act."

It is admitted that the defendant company was incorporated by act of Congress for the purpose of constructing and operating a railroad from a point in the State of Texas to San Diego, California, with an authorized capital not exceeding $50,000,000, less than one-sixth of which was issued; and that the company has not invested or used its capital in this Commonwealth except in the purchase of rails and other railroad material and supplies; but during the year ending July 1st, 1880, it kept and maintained for the use of its officers, stockholders, agents, and employés in the transaction of their business, an office in the city of Philadelphia, without having obtained a license from the auditor-general. The company having thus failed to procure a license, the

auditor-general and State treasurer, in pursuance of the provisions of the act, settled an account against it for $12,500, with interest from October 21st, 1880. From this settlement an appeal was taken by the company, and the Court of Common Pleas, in a clear and able opinion, held that it was not liable, for the reasons that it is not a foreign corporation within the meaning of the act, and that nearly all its capital stock actually issued was held and controlled by the California and Texas Construction Company, a corporation of this State, which was liable to pay and did pay a tax under a previous section of the act, and hence the defendant was within the protection of the proviso above quoted. These are controlling points in the case, and if either of them be correct, the judgment must be affirmed.

The General Government, in its relation to that of the several States, cannot be considered a foreign government in the ordinary acceptation of that term. Within the sphere of its delegated powers its authority extends over all the States of which it is composed, and to that extent it may be said to be identified with the government of each. Hence, a corporation created by the government of the United States cannot with propriety be called a foreign corporation. It is contended, however, that in a more comprehensive sense, all corporations not created directly by State authority may be classed as foreign, in contradistinction to those of exclusively State origin; and that such was intended to be the meaning of the word " foreign " as used in the act. This might be so if there was anything in the act itself indicative of an intention to use the word in that sense, but there is not. On the contrary, in the fifth section, which imposes a tax on limited partnerships, etc., they are described as ' partnerships organized under or pursuant to the laws of this State, or of any other State or Territory, or of the United States, or under the laws of any foreign state, kingdom, or government." Thus clearly showing that when the legislature intended to tax associations created by the General Government they used apt words of description for that purpose. The same distinction is observed in other portions of the act, especially in the sixth section. The construction adopted by the learned president of the Common Pleas is so fully sustained on principle as well as authority, that it is unnecessary to add anything to what is so well said in his opinion.

But, assuming that the sixteenth section of the act should be so construed as to embrace corporations created by act of Congress, the judgment is still clearly right on the other ground, viz., that the defendant is within the protection of

the proviso. The fact was conclusively established that nearly all of its actual capital stock was held and controlled by the California and Texas Construction Company, a Pennsylvania corporation, which paid a tax under a prior provision of the act; thus bringing the defendant directly within the terms of the proviso. In answer to this position, it is suggested that the phrase "capital stock or a majority thereof" refers to the authorized or *nominal* and not to the *actual* capital of the company. Such a construction of the proviso is unreasonable, and wholly unwarranted by anything contained in the act. When authorized or nominal capital, in contradistinction to actual capital, is intended to form the basis of taxation, it is so designated as to leave no room for doubt as to what was meant. In a case like the present, in which less than one-sixth of the capital stock which the company is authorized to have has actually been issued, the proviso would be inoperative if it means authorized capital. In the very nature of things, capital stock, authorized but not issued, could not be owned or controlled by another corporation. We have no doubt the words of the proviso refer to capital stock actually issued, and not to capital merely authorized.

In any view that can reasonably be taken of the case the judgment is correct.

> Judgment affirmed.

MAY TERM, 1881, No. 147.                    JUNE 8TH, 1881.

